JAMES M. SUMNER v. ASA JONES.

*Motion to dismiss. Appeal. Contract on the Sabbath.*

An action upon a promissory note, originally above twenty dollars, and indorsed below that sum, but not below ten dollars, the *ad damnum* in the plaintiff's writ being over twenty dollars, is appealable, and regard is to be had only to the note as originally given, and if the face of the note exceeds twenty dollars, the case is appealable.

A contract made and completed on Sunday, without any subsequent act or promise ratifying the same, is void.

But where S., on Sunday, sold a horse to J., for which J. on the same day gave S. his note, and afterwards made two payments upon the note, and retained the horse without offering to return the same, it was held, that these payments upon the note accompanied with the retention of the property was a subsequent ratification of the contract, and that S. was entitled to recover the balance due upon the note.

ASSUMPSIT. The action was commenced before a justice of the peace, and came to the county court by appeal. The defendant moved to dismiss the suit, on the ground that the same was not appealable. The county court overruled the motion, May Term, 1850. Exceptions by defendant.

The case was tried May Term, 1851. Plea *non* assumpsit and offset. Issue to the country on both pleas, and trial by jury. The plaintiff gave in evidence the note declared on, dated the 26th day of April, 1847, for the sum of $30, payable in six months from date with interest, and rested.

Upon said note, two payments had been made and indorsed, one the 25th day of March, 1848, of sixteen dollars, the other the first day of June, 1848, of five dollars.

The defendant gave evidence, under the general issue, tending to show that said note was made, executed and delivered on Sunday, between twelve and three o'clock, P. M., as part and in consideration of a trade that day made for the purchase of a horse by the defendant, of the plaintiff, and which horse the defendant still retains, and has never offered to return to the plaintiff. The defendant claimed and requested the court to charge the jury, that if they found the note to have been executed and delivered as the evidence tended to .show, the plaintiff was not entitled to recover. The court refused so to charge—and did charge the jury that,

though the note was made and delivered on Sunday, as the evidence tended to show, if the payments were made thereon by the defendant, at the times evidenced by the indorsements and the horse retained by the defendant, without any offer to return the same, it would be an affirmation and ratification of the note, and render it obligatory on the defendant, the same as if executed and delivered on any other day; and the plaintiff would be entitled to sustain his action on said note.

Exceptions by defendant. Proofs were offered under the plea in offset, but no exception was taken to the ruling and charge of the court on that part of the case. Verdict for plaintiff.

*Tracy, Converse and Barrett* for defendant.

The question in this case, is solely, whether the note is void or valid, as affected by the day on which it was made. See *Lovejoy* v. *Whipple,* 18 Vt. 379, for what this court held where the full consideration had passed from plaintiff without any offers to return or refund the same.

In *Adams* v. *Gay,* the case of *Blossom* v. *Williams,* and of *Williams* v. *Paul* are referred to as recognizing or involving the principle, that Sunday contracts may be on some other day subsequently affirmed, I cannot detect any such thing in the first named of 2d cases: see the cases 10 E. C. L. 60.

In *Williams* v. *Paul,* it seems to me that the doctrine is that a Sunday contract cannot be affirmed. See case 6 Bing. 653.

Suppose there had been *only* a special count on the original Sunday contracts, and the proof offered had been precisely what was in fact given, would the suit have been sustained?

In the present case, we submit, that the note was *void.* The case was tried and put by the court in the *declaration* solely on the *note.* The only competent proof is the note. Without the note, there is no proof to sustain the declaration. In order to render it valid for such a purpose, it must either become a new and *untainted* contract in precisely the same terms,—or the old note must be renovated by some act of affirmation having relation to the time when it was made, so that being still a note made on Sunday, the sin of it is made as no sin.

Is this a legal possibility? At any rate, we claim that nothing of this kind has been done in this case.

If it has been done, then the sanctification of a Sunday contract is no more difficult than the slightest act which can avoid a statute bar, or affirm an infant's contract after becoming of age.    This amounts to *universal salvation*, and Sunday contracts and Sunday contractors will have nothing to fear from judges in this world, whatever may be their hazards before the ultimate tribunal for man and his deeds.

*Washburn & Marsh* for plaintiffs.

The motion to dismiss was properly overruled.

1.  The note declared upon was for $30,00 : but payments had been made and indorsed, so that the amount due at the time the suit was commenced exceeded $12,00.    The *ad damnum* was $50,00.    The decision of the court below was in accordance with the decision of precisely the same question, by the Supreme Court, in *Tyler* v. *Lathrop,* 5 Vt. 170, and *Boardman* v. *Harrington,* 9 Vt. 151.

2.  The charge of the court in reference to the affirmance of the contract made upon Sunday is precisely in accordance with the law, as decided in the case of *Adams* v.  *Gay,* 19 Vt. 358,—a decision reflecting great credit upon this court, and which has rendered the case a leading one upon this subject in the United States. " A contract made upon Sunday is merely void until subsequently affirmed by mutual consent."  In this case, the plaintiff *affirms the contract by seeking to enforce it ; and the defendant has affirmed it, by twice making payments upon it and by retaining the property, which he received from the plaintiff.*    A payment is an acknowledgent of the validity of the debt, and that it is still due.— It avoids the effect of the statute of limitations, which is a statute bar to the action, precisely analagous to the effect given to making the contract on Sunday.    A Sunday contract is not void at common law, any more than a suit is barred at common law in six years.  That which is evidence of a new promise in the one case must be the same in the other.

In *Sargeant* v. *Butts,* 21 Vt. 99, the decision in *Adams* v. *Gay,* is distinctly recognized as authority, and both are fully sustained by the case of *Williams* v. *Paul,* 6 Bing. 653.    (19 E. C. L. 192.)

The opinion of the court was delivered by

ISHAM, J. The first question arising in this case, is upon the motion to dismiss, and involves the propriety of the appeal granted in this case, from the judgment of the justice.

The *ad damnum* in the writ is laid at fifty dollars. The declaration is upon a promissory note of thirty dollars, on which two indorsements have been made, leaving a balance of over twelve dollars due thereon at the time of the commencement of this suit.—— Without reference to the plea in offset, and the right of appeal thereon, we entertain no doubt that the plaintiff was entitled to an appeal from the judgment against him on the note.

The language of the Comp. Stat. p. 239, is too similar with that of the act of 1821, Slade's Comp. 139, to indulge the idea that there was any intention to alter the then existing right of appeal. And we must regard the decisions which have been made under the latter act, as giving a practical construction to the act under which this appeal was taken. In the two cases to which we have been referred from the 5th and 9th of Vt. Rep., it was held that no reference was had by the act of 1821 to the balance that might be due upon the note, but regard was to be had only to the note as originally given. And if the face of the note exceeded twenty dollars, an appeal should be allowed. This construction should be given to the act under which this appeal was taken. The motion to dismiss was therefore properly overruled.

The case then is narrowed down to the consideration of the question arising on the 2d bill of exceptions filed in the case.—— From the facts there stated, we learn that this note was executed and delivered on Sunday, on the purchase of a horse on that day, bargained for and delivered. If the case rested on these facts alone, there can be no doubt that the defense would be complete, as being a contract of that illegal character, that no court would lend its aid to enforce. Its illegality arises from positive provisions of a statute which forbids under a penalty the exercise on that day of such employment and labor. It has been very properly observed, that in any case such a defense comes with ill grace from a defendant who personally has been engaged in such violation of the law——that it is to be borne in mind that the object of the statute is " the benefit of the public, not the advantage of the defendant." It is not for his sake that the defense is ever allowed. But as observed by Lord Mansfield in Holman *v.* Johnson,

Cowp. Rep. 343, " It is founded in general principles of policy, that no court will lend its aid to one who founds his cause of action upon an immoral or an illegal act.. If the cause of action arise *ex turpi causa*, or from the transgression of a positive law, the court will say, the plaintiff has no right to be assisted, they will not lend their aid to such a plaintiff. The parties will be left where they have placed themselves. The law will not interfere to relieve in the one case, nor enforce the contract in the other.

It is claimed, however, and on this question there seems to be a uniformity of decision, that contracts of this character are not rendered void, as being illegal at common law, but their illegality consists merely as being *mala prohibita*, not *mala in se*, and may be obligatory by the subsequent act of the parties. Thus it has been held that a contract is legal and will be enforced where the same was completed and perfected on another day, though its provisions and details were agreed upon and settled on the Sabbath.— This was so ruled under the English act, in the case of *Bloxsom* v. *Williams*, 3 Barn. & Cress. 232, and has been so expressly decided in this State in *Lovejoy* v. *Whipple*, 18 Vt. 379. It has also been held that where the contract has been completed on that day, so as to fall expressly within the prohibition of the act, yet it may be rendered obligatory by a subsequent promise of the parties to perform it; such promise is considered as a ratification of the contract, and when so ratified, the parties may have a remedy thereon. It was for the first time so ruled in the case of *Williams* v. *Paul*, 6 Bing. Rep. 653. That was a clear case of an executed contract on Sunday — the property was retained by the defendant, and afterwards on another day, the defendant promised to pay the plaintiff for the property. And it was held that the subsequent promise " was sufficient on the *quantum meruit*, or as a rat-" ification of the agreement made on Sunday." They would allow *no recovery to be had on the contract made on Sunday*, but treated the promise as creating a *new duty*, that would allow a recovery for the value of the property on the general counts. Whether this modification of the act, so made by judicial construction merely, is founded upon those principles of public policy which gave rise to the passage of the act, has been justly questioned. PARK, J., in that case uses this emphatic language: " That we regret to " be obliged to come to this conclusion, because it may have a ten-

"dency to defeat the statute." And had the statute not been modified, there would have been no ground of complaint that it was inequitable or hard in its operation. No more, than such complaint can be made in any case, where one openly and intentionally violates the positive provisions of a penal law. The case, evidently adopted a principle never before recognized in the English courts, and neither the court or counsel referred to a case, in which the doctrine had been sustained, and in the case of *Simpson* v. *Nichols*, 3 Mees. & Wels. R. 239, the court express a doubt whether the cash of *Williams* v. *Paul* could be supported in law. It is to be borne in mind however, that that case proceeds only upon the ground of a retention of the property and a subsequent *express promise* to pay for the same, sufficiently definite and positive to be the substantive ground of an action, distinct from that made on the Sabbath.

In the case now under consideration, the contract has never been ratified by a subsequent express promise, and the important question arises, whether there are any facts found in the case that will produce the same legal result. The court charged the jury "that though the note was made and delivered on Sunday; yet if "the payments were made thereon by the defendant as indorsed, " and the horse retained by the defendant without any offer to re-" turn the same, it would be an affirmation of the note and render "it obligatory, the same as if executed and delivered on any other "day."

It is evident that the English authorities have not gone to this extent, for while it has been held, that a subsequent promise is sufficient to sustain a recovery for the value of the property; it has never been held in those courts that a promise can be *implied* from the mere fact of a retention of the property, or that subsequent payments are equivalent to an express promise. But on the contrary, CHITTY in his treatise on Con. p. 424, says "that " the law will not raise an implied promise from the mere fact "that the property had been retained by the defendant." And this rule as given by CHITTY has been directly decided on demurrer in the case of *Simpson* v. *Nichols*, 3 Mees. & Wels. Rep. 239, in which they held that the action could not be sustained, without a subsequent express promise. And even in that event, they doubted whether that, or the case of *Williams* v. *Paul*, could be

supported in law. In relation to subsequent payments, although that may be sufficient to avoid the statute of limitations. Yet that circumstance has never been considered as creating a new substantive cause of action, or rendering obligatory a contract upon which no action could previously have been sustained, 2 Barn. & Cress. 824. 2 Esp. Rep. 628.

In this light, this subject stands upon the English authorities. Having adopted the principle in the case of *Bloxsom* v. *Williams*, they have not only manifested a disinclination, but a positive refusal to enlarge the means of avoiding the consequences of such illegal contracts by any act of the parties, short of a subsequent express promise to pay for the property, and then not by enforcing the original contract made on Sunday—but by giving that effect to the subsequent promise, that will enable the party to recover for the value of the property on the *quantum meruit.*

In this State, however, the cases have in many important particulars established different principles. The case of *Lyon* v. *Strong* fully sustains the cases of *Fennell* v. *Riddle*, 5 Barn. & Cress. 406, *Smith* v. *Sparrow*, 4 Bing. 84, and *Drury* v. *Defountain*, 1 Taunt. 134, in holding such contracts void. And the case of *Barron* v. *Pettes*, 18 Vt. 385, recognizes the doctrine of the case of *Bloxsom* v. *Williams*, requiring the contract to be perfected on Sunday to render it void.

In the case of *Adams* v. *Gay*, 19 Vt. 358, it was held, that *a refusal to rescind the contract* and return the property at the request of the other party was an affirmation of the contract, and rendered it obligatory, and in the case of *Sargent* v. *Butts*, 21 Vt. 99, in which there was a subsequent promise, it was held, that such promise ratified and rendered obligatory, an award made on Sunday, so that an action could be sustained on the award itself. And whatever may be the views of the English courts in relation to the case of *Williams* v. *Paul*, that case has been referred to in all the above cases, in some without the expression of any dissatisfaction, and in others by a direct approval of its doctrine. The principal of these cases must decide the present. The case in the 21st of Vt. Rep. will sustain this suit on the original contract, on a subsequent ratification of the same, and a refusal to have the contract rescinded followed by a retention of the property cannot be considered a stronger or more unequivocal ratification of such

contract, than in this case, are the several payments which have been made on the note followed by the same act in retaining the property. Upon the authority of these cases, therefore, we must consider this note subsequently ratified, and that a recovery can be had for the balance due thereon. To this extent, we are carried by former decisions of this court, and from which we are not at liberty to depart. If there had been no subsequent payments on this note, and the case had stood upon the mere retention of the property, whether that circumstance alone would ratify the contract, we are not called upon to decide. Evidently it would not have that effect in the English courts.

The result is, the judgment of the county court must be affirmed.