FRANCIS E. KESSELRING, Appellant, v. ALBERT HUMMER.

**Seduction:** EVIDENCE OF OTHER ACTS. In a civil action for seduction, 1 the cross examination of prosecutrix on the subject of·intercourse with other parties within sixty days of the date at which she testified her child was begotten by defendant, was not subject to the objection that the time inquired about was too remote from the date of the alleged crime.

**Evidence:** CONCLUSIONS. Where the actions and conduct of parties 2 can be described a witness should not be permitted to give his conclusion as to how they acted toward each other.

**Expert testimony.** Whether conception would likely follow as the 3 result of the first intercourse of parties under circumstances as detailed was not the subject of expert testimony; and further, the witness had not shown himself qualified to testify.

**Corroboration of witness:** EVIDENCE: SIMILAR STATEMENTS. Proof 4 of statements made by one who had not then been examined were inadmissible for the purpose of corroborating his testimony subsequently taken, where there was no attempt to impeach the witness and no contradictory statements made by him were shown: and even if contradictory statements had been shown, the rule excluding consistent statements of the witness, subject to certain exceptions, still obtains.

**Seduction:** EVIDENCE OF OTHER ACTS. Testimony of a witness tending to show that he, rather than defendant, may have been the father of prosecutrix's child, is admissible in an action for seduction.

**Expert testimony:** PERIOD OF GESTATION. In an action for seduction, where there is an issue as to the paternity of the child, evidence of the period of gestation is admissible.

**Expert evidence.** Only such expert testimony as is based on proven facts should be considered by the jury.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

FRIDAY, MARCH 9, 1906.

ACTION for damages occasioned by seduction. Judgment for defendant, from which the plaintiff appeals.— *Reversed.*

*Ranck & Bradley, J. B. Murphy,* and *J. G. Marner,* for appellant.

*J. M. Dower* and *Holbert & Holbert,* for appellee.

LADD, J.— The plaintiff alleged that defendant seduced her on the 12th day of April, 1903, and that, as a result, she was delivered of a child January 14, 1904. The evidence shows, without controversy, that he had met her with increasing frequency since May, 1901, and that they were together in the evening of the day first mentioned, but he denied ever having had intercourse with her. The errors assigned relate to rulings on the admissibility of evidence and the instructions to the jury. These will be disposed of in the order argued.

I. The plaintiff was employed as a domestic by Wm. Rutherford for three weeks during the latter part of May and fore part of June, 1903. On cross-examination she was asked whether on different occasions during that time

she had not indulged in sexual intercourse with Walter Sterchi, another employé. The objection to this as incompetent and too remote was overruled. Plaintiff alleged the birth of a child in aggravation of damages. She had testified that it was conceived of defendant April 12th. The theory of the defendant was that this child was begotten by Sterchi and, as bearing on this phase of the case, the ruling was correct. *State v. Swafford,* 98 Iowa, 362. The time was more remote than in the cited case but several physicians were of the opinion that the period of gestation varies from 225 to 330 days and if so the cross-examination was within the rule of that decision.

1. SEDUCTION: evidence of other acts.

II. Defendant had visited the plaintiff at the home of Wm. Brogley often, and the latter, after testifying to seeing them together frequently, was asked how they acted toward each other and answered: "They acted like lovers." The answer was stricken on motion as incompetent. The ruling was correct. Some difficulty may be experienced in accurately describing the phenomenon mentioned, but the manifestation is seldom the same between different persons, and what might appear to one as the action of a lover would seem but the indication of friendship to another. The safer rule is to permit proof of acts and conversations and leave the deductions to be drawn therefrom to the jury. The answer, as it must have been deduced from many circumstances, was not within the rule permitting a witness to state a conclusion when the matter to which his testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time. See *Yahn v. City of Ottumwa,* 60 Iowa, 429; *Bizer v. Bizer,* 110 Iowa, 248, and like decisions.

2. EVIDENCE: conclusions.

III. The plaintiff testified that the intercourse with defendant occurred in a buggy. One of the physicians, after explaining that the probability was against conception resulting from intercourse with a virgin, was asked:

3. EXPERT TESTIMONY.

Q.   Suppose that in any given case, where the woman is of average height and build, will say from one hundred to one hundred and sixty pounds, and the man is fully developed, a husky boy weighing from one hundred and sixty-five to one hundred and eighty pounds, and of usual height, and under circumstances like that where the act of intercourse took place in a top buggy and the top was up, and this was the first intercourse, what would you say as to the probability or improbability of conception following such act of intercourse?

Over objection that this was not the subject of expert testimony, he was permitted to answer: "I think it is very unlikely." The ruling was erroneous. The inquiry related to nothing connected with medical science, save what had already been detailed and the witness had not disclosed special knowledge with respect to like situations. The matter was not the subject of expert testimony. *State v. Peterson,* 110 Iowa, 647. A like objection was lodged against a question as to whether pregnancy would be likely to result from the first intercourse of a woman. It was properly overruled.

IV.   One Addy, after telling of his somewhat intimate acquaintance with Walter Sterchi, was asked whether he had a conversation with him in the latter part of June or in

4. CORROBORATION OF WITNESS: evidence of similar statements.

July concerning his relations with plaintiff, and over objection, was permitted to answer that he had and to relate that Sterchi had told him " that he was in trouble, I asked him what his trouble was, and he said that he was really ashamed to tell me, that he had always gone in our society, the best society, and I asked him to state what his trouble was, and he said that he had been monkeying with Frances Kesselring, and that he had got her in a fix, and that something had to be done; he said he had consulted or obtained good medical advice, and I asked him about marrying the girl, and he said if she was a decent girl he would marry her, and he said that there were other men knew they had been

monkeying with her, and he talked as if he might commit an abortion if necessary, and I told him not to, but I advised him to pack his clothes and make his get-away, for they had a clear case against him if what he said was true."

Sterchi had not been called as a witness and we are at a loss to understand upon what theory the evidence was received. Appellee suggested, in support of the ruling, that as Sterchi was subsequently called as a witness, this evidence, as well as that of Hunt, who was allowed to testify that Sterchi had consulted him concerning a proposed abortion on plaintiff, and also Sterchi's account of his interviews with these men was admissible as tending to sustain his credibility as a witness. No attempt to impeach him, save by emphasizing the improbability of his story by cross-examination, was made. He was not shown to have made contradictory statements, and even if he had evidence of consistent statements has always been excluded in this State save in exceptional cases. *State v. Cruise,* 19 Iowa, 312; *State v. Vincent,* 24 Iowa, 570; *Boyd v. First National Bank,* 25 Iowa, 255; *Green v. Cochran,* 43 Iowa, 544.

These exceptions are pointed out in the above decisions and especially in State v. Vincent where they are enumerated: " If the witness is charged with a design to misrepresent, on account of his changed relation to the parties or the cause, evidence of like statements before such change of relation may be admitted; so, if it is attempted to be shown that the evidence is a recent fabrication, or when long silence concerning an injury is construed against the injured party, as in cases of an indictment for rape, in such cases it is proper to show that the witness made similar statements soon after the transaction in question." The exceptions are sometimes said to include all cases where the record is such as tends to charge the witness with having given testimony under the influence of some motive which might prompt him to make false or colored statements. *Barkly v. Cope-*

*lyand,* 74 Cal. 1 (15 Pac. 307, 5 Am. St. Rep. 413) 30 Am. & Eng. Ency. of Law, 1148.

It is not enough that the party tendering such evidence suspects that the other side may argue to the jury that the facts are such as bring the case within one of these exceptional situations. The ground to take the case out of the general rule and authorize the admission of consistent statements must clearly appear in the record. *Ætna Ins. Co. v. Eastman,* 95 Tex. 34 (64 S. W. 863); *Martin v. State,* 119 Ala. 1 (25 South. 255).

Nothing in the record before us brings it within any of the exceptions. True the witness was asked on cross-examination what he was to receive for coming from Minnesota to testify and answered that he was to have his expenses, and such wages as he would have earned had he not come, paid him. He could not have been compelled to attend from another State, and no argument is needed to sustain the proposition that for a witness to receive fair compensation for his time and expenses, under these circumstances, was not corrupt. The evidence should have been excluded.

V. Objection was interposed to testimony by Sterchi that during the latter part of May and fore part of June, 1903, he had intercourse with plaintiff frequently. This

5. SEDUCTION: evidence of other acts.

was overruled and rightly so for such testimony tended to show that he, rather than defendant, may have begotten the child. But, in so far as he was allowed to relate what he had said to the witnesses Eddy, Hunt or others, of his connection with plaintiff, the objections should have been sustained.

VI. Appellant complains of the ruling by which experts were allowed to express opinions as to the probable period of gestation. Of course they disagreed, as is usual in

6. EXPERT EVIDENCE: period of gestation.

such cases, and whether any assistance was afforded the jury may well be doubted. Such evidence however is universally admitted and as the parentage of the child was involved, knowledge of

the period of gestation was of vital importance in ascertaining whether it was begotten by defendant or Sterchi.

VII.  In the fifteenth instruction the court after saying that opinions of experts, based on unproven facts, should be disregarded, advised that the value of such opinions would depend, among other things, upon " the satisfactory or unsatisfactory proof of supposed facts upon which the opinion is based." Just what was intended is not clear. That the first portion of the instruction is correct appears from *Stutsman v. Sharpless*, 125 Iowa, 335. If the evidence is so unsatisfactory as not to establish the facts upon which the expert opinion is based it should not be considered at all, if these are proven the party introducing the opinion of the expert is entitled to its consideration on the theory that they are established, and the character of the proof of such facts is immaterial in determining the value of the expert's opinion. The exception to the seventeenth instruction need not be considered as the evidence upon which it was based will probably be objected to on another trial. See *Delvee v. Boardman*, 20 Iowa, 446. The error in the eleventh instruction evidently occurred through inadvertence and will not be repeated.

7. EXPERT EVIDENCE.

Because of the errors pointed out, the judgment is *reversed*.